IJilGH, J.,
 

 delivered the opinion of the Court.
 

 The plaintiff in error, at the spring term in the year 1849, of the Superior Court of law and chancery for the county of Culpeper, was indicted for the murder of David W. Miller, and upon his trial was found by the jury guilty of murder in the first degree. He then moved the Court to grant him a new trial, but- his motion was overruled, and judgment rendered against him upon the verdict. This Court at the last term reversed the judgment, and directed that another trial of the case should be had. This trial has been had, and the same verdict and judgment have been rendered against the accused; and he has again applied to this Court to reverse this last judgment. The ground upon which he makes this application is, that the evidence introduced on the trial was wholly insufficient to prove that he was guilty of the murder, or in any manner connected with it. The evidence is set forth in the exception taken to the opinion of the Court refusing to award a new trial.
 

 This Court is fully aware of the weight which ought to be given to two concurring verdicts, approved by the Judge who presided at the trials; and if in our opinions the evidence made even a probable case of guilt, we would be unwilling to disturb the judgment. But at the last term this Court was of opinion, unanimously, that the evidence introduced on the first trial was plainly insufficient to connect the accused with the murder. The evidence on the second trial is somewhat different from the evidence on the first trial, but this difference is favourable to the . accused; and after examining tlie testimony anew, we are again unanimously of opinion, *that it is wholly insufficient to sustain the verdict and judgment.
 

 We do not deem it necessary to make a minute examination of all the evidence, because we think it plain that the circumstances relied on to prove the guilt of the accused are slight or are sufficiently explained. These circumstances, or rather the circumstances tending most strongly to prove the guilt of the accused are, that he was at the residence of the deceased, the place where the murder was committed, at, or just before, or just after dark of the night when the crime was perpetrated; that a shovel and spade were carried by the accused during the same night from the residence of the deceased; that the wounds inflicted on the deceased were made with some blunt instrument; that the shovel carried from the residence of the deceased had upon it, when it was found the night after the murder, spots of blood, and that the accused- said the morning after the murder, ‘ ‘that he did not know where the spade and shovel were.”
 

 We cannot consider the fact thht the accused was at the residence of the deceased about dark of the night of the murder as furnishing any evidence of guilt; since he was there for a proper purpose, namely, to-redeem his spade and shovel, which had been taken possession of and detained by the partner of the deceased, to secure the payment of a debt or debts due by the accused. Besides, the accused remained on this occasion at the residence of the deceased but for a short period, as it is proved clearly that he was at the house of another person, half a mile distant, very early in the same night, and the whole evidence too, makes it altogether improbable that the murder was committed at so early an hour of the night. Nor do we think that the fact, that the spade and shovel ¡were carried from the residence of the deceased during the night, furnish any *stronger evidence of guilt that the fact above mentioned, as it is proved by an uncontradicted and credible witness that the accused carried with him both the spade and shovel, when he left the residence of the deceased at or about dark. The judge who presided at the trial, was of opinion that this witness was under some mistake, and that the spade was not then carried off. This opinion was founded on the fact, that the spade carried off was not the spade of the accused, but another spade belonging to the store, and upon the fact that the accused had not enough money to redeem both the spade and the shovel. There is certainly some evidence, namely, the condition mentioned in Parr’s order, and the fact that the deceased received that order as a payment, from which it may be inferred that the deceased delivered the spade as well as the shovel to-the accused, and as the spades were so much alike, we cannot regard, under the circumstances, the fact that the spade belonging to the store instead of the one belonging to the accused, was carried off, as important. However this may be, we do not think the circumstances which weighed with the presiding Judge, sufficient to justify us in disregarding the testimony of the witness. The strongest circumstance against the accused, is the appearance of drops of blood upon the shovel which he carried from the residence of the deceased. This circumstance would have been entitled to much weight, if it had appeared that the accused had retained the possession of the shovel throughout the night, especially if the spots of blood had appeared to have been recently made. But we think it sufficiently proved, that the accused had not the possession of the shovel throughout the night. The Commonwealth gave in evidence the declarations of the accused made the morning after the murder was committed, and these declarations were “that he (the accused) was drunk the night before; “'that he lost both spade and shovel in going from Wood’s to Huffman’s; and that he did not then know where they were.” Declarations of persons accused are not much to be relied, on; but in this case the truth of the declarations was persisted in under peculiar circumstances;—
 
 *319
 
 under severe torture, which we are sorry to say the bystanders, under the great excitement of the moment, forgetful of the mild spirit of our law, thought themselves at liberty to inflict. Besides, the declaration is so far supported, that it appears that at the time the declaration was made, both spade and shovel were in the possession of some other person. For both were found, two hours after dark of the night after the murder, in a place where they certainly were not at 12 o’clock of the preceding day, and of course they must have been placed where they were found by some other person, as during the whole period the accused was in close custody. There is too, other testimony which connects some other person with the murder. A pistol was carried from the residence of the deceased the night of the murder. This pistol was found at a place where it had been recently put, long after the accused was in close confinement, and it must therefore have been in the possession of some other person. The conduct of the accused is calculated, in some measure, to disprove the charge against him. He came to the place of the murder the morning after it had been committed, wearing the clothes which he had on the preceding night, and these had no stains of blood upon them. It is not at all probable that the accused changed his clothes during the night, and it is still less probable that the murderer escaped without marks of blood upon his clothes. For marks of blood were found on the floor of the room, on the counter and desk, sprinkled on the goods on the shelves, on the ground near the scene, and on a fence distant a few yards. Upon the whole case, we are of opinion *that the testimony is not only not sufficient to prove the guilt of the accused, but that it is hardly sufficient to raise a suspicion against him. The judgment must therefore be reversed and a new trial awarded.