# Richmond

## WILLARD R. TERRY V. COMMONWEALTH OF VIRGINIA.

October 7, 1938.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*Gilbert E. Pence* and *F. H. Brumback,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Walter E. Rogers, Special Assistant,* for the Commonwealth.

HUDGINS, J., delivered the opinion of the court.

The accused was convicted of involuntary manslaughter, and sentenced to confinement in the penitentiary for a period of eighteen months. The only question involved is whether or not the evidence is sufficient to establish the *corpus delicti.*

The facts established by the verdict of the jury are that the accused, while driving his car in an intoxicated condition, struck the rear end of another car so hard that it was forced across the intersection where it struck William Fox, a pedestrian. The blow broke Fox's left leg and rendered him temporarily unconscious. He was taken to the hospital that afternoon and examined carefully by Doctor R. F. Cline, who set the broken leg. The next day, Monday morn-

ing, Fox ate a good breakfast and seemed to be resting comfortably. Shortly after seven p. m. the Doctor again visited him and found that he had eaten a good dinner and was resting easily. At ten-thirty p. m., some three hours later, the doctor, in response to an emergency call from the hospital, returned and found that the patient was suffering from "acute pulmonary edema of the lungs." As a result of this disease he died Tuesday morning.

The trial court overruled the motion to strike the evidence, and the motion to set aside the verdict on the ground that "the doctor's testimony need not be questioned, but the doctor, while an important witness, is at most a witness, and the other facts and circumstances brought out in the evidence are sufficient * * * to make the determination of the cause of death one for the jury rather than the court."

The attending physician stated in positive language that the immediate cause of death was "acute pulmonary edema of the lungs." The difficulty arises in determining the cause of this collection of fluid in the lungs.

Non-expert witnesses testified that on Sunday, between twelve and one p. m., the deceased was knocked temporarily unconscious, his left leg broken by an automobile, and that early on Tuesday morning—that is, in less than forty-eight hours after the injuries were inflicted—he died.

The normal procedure in such cases is for the Commonwealth to establish by competent evidence that death resulted from the injuries inflicted. Because a person dies within two days after receiving a severe injury, it does not necessarily follow that the injury was the proximate or efficient cause of death. The Commonwealth in this case relied solely on the testimony of the attending physician to supply the connecting link. This physician attended the deceased immediately after the injury and, while he said he did not make an intensive examination for internal injuries, he did make a very careful examination, and the only injury he found was a broken leg. He further stated that there were no other bruises on the body of the deceased; that the patient responded to treatment in a normal way,

and that death was the result of a disease—that is, a sudden attack of acute pulmonary edema of the lungs. When pressed to state the cause of this disease, he said that the origin was unknown. Upon being asked, "Do perfectly well people have it?" he replied, "Yes, and young people can be seized with it, I have seen young people die right in bed, it comes on that sudden." * * * "And you don't state at all that this condition you have described was caused by this accident to this man?" "No, I do not."

It is, therefore, apparent from the testimony of the only witness introduced by the Commonwealth who was in a position to speak with authority, that it is equally probable that death was the result of natural causes as it was of the injuries received in the accident.

In every prosecution for the commission of a homicide, the *corpus delicti* has two components; death as the result, and the criminal agency of another as the means. In *Smith's Case,* 21 Gratt. (62 Va.) 809, and *Nicholas' Case,* 91 Va. 741, 750, 21 S. E. 364, 367, it is said that "it is only where the first (that is, death by criminal violence) has been proved either by the direct evidence of witnesses who have seen and identified the body, or where proof of the death is so strong and intense as to produce the full assurance of moral certainty, that the other (the criminal agency) can be established by circumstantial evidence." *Cochran's Case,* 122 Va. 801, 94 S. E. 329; *Dean's Case,* 32 Gratt. (73 Va.) 912.

In *Brown* v. *Commonwealth,* 89 Va. 379, 16 S. E. 250, it is said that there can be no conviction where the *corpus delicti* is not proved with particular clearness and certainty.

In the case at bar the evidence was sufficient to convict the accused of driving the car while under the influence of liquor, or to convict him of violating the statute regulating traffic upon the highways, but he was prosecuted for neither of these crimes. The indictment charged him with manslaughter. The burden was upon the Commonwealth

to prove that the unlawful act of the accused was the efficient cause of the death of William Fox.

In *Williams* v. *Commonwealth*, 130 Va. 778, 107 S. E. 655, 656, we said: " 'Where there is evidence tending to criminate, the jury is almost uncontrollably the judge of its force and weight and of the proper inferences from the facts proven.' * * * . But in the case before us the evidence before the jury, when regarded most favorably for the Commonwealth, left it, to say the least, equally probable that the death of the deceased was due to the natural cause of indigestion, as the result of overeating * * *, as that the death was due to any cause for which the accused could be said to be responsible. So that there is no evidence tending to exclude the hypothesis that the death of the deceased was due to such natural cause alone."

A citizen should not be deprived of his liberty or his life on a mere possibility, and the only witness introduced by the Commonwealth qualified to state the cause of death, said that he did not know, and that it was merely possible that the shock produced the liquid on the lungs which resulted in the death of the deceased.

For the reasons stated, the judgment is reversed, the verdict set aside, and the case remanded for such further proceedings as the Commonwealth may be advised.

*Reversed and remanded.*

CAMPBELL, C. J., dissenting.